IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER CROOM,
#R23966,

    Plaintiff,

v.

JOHN DOE #6,
JOHN DOE #8,
JOHN DOE #9,
ANTHONY WILLS, *official capacity only,*
and
SERGEANT STORY,

    Defendants.

Case No. 22-cv-01244-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Christopher Croom, an inmate in the Illinois Department of Corrections ("IDOC"), filed this case alleging deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. This matter is before the Court on a motion to compel filed by Plaintiff. (Doc. 37). The Court held a hearing on the motion on November 30, 2023. (Doc. 48). For the following reasons, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiffs alleges that on February 17, 2021, while housed in the segregation unit at Menard Correctional Center ("Menard"), several inmates became disruptive, kicking and banging on the doors and bars, setting fires, and causing flooding. (Doc. 35, 36). Staff members in tactical gear entered the cellhouse and sprayed inmates with fire extinguishers and mase. Correctional Officer John Doe 6 sprayed mase in every open cell. When John Doe 6 came to Plaintiff's cell, Plaintiff was sitting on his bed, not being disruptive, and still he was sprayed with

mase for no reason.

An hour passed, and John Doe 6 came back through the gallery and again sprayed Plaintiff for no reason. Inmates were then removed from their cells, and Plaintiff was placed in handcuffs and placed in a room with five to seven other inmates. He sat in the room with his hands cuffed behind his back for eight hours. During this time, he asked to use the restroom several times to Correctional Officer Osborn,[1] and his requests were denied. Because he was not allowed to use the bathroom, Plaintiff urinated on himself and the floor.

Later, Sergeant Story,[2] John Doe 8, and John Doe 9 came to take Plaintiff to his cell. Osborn had told the escorting officers that Plaintiff had urinated on himself and the floor. After they left the room, one of the officers said, "You want to be an asshole and piss on the floor." Plaintiff was then struck from behind "in the back of the jaw by a closed fist and [he] fell." While on the ground and still handcuffed, Plaintiff was punched and kicked. The officers continued to say, "stop resisting," even though Plaintiff was not resisting and was trying to protect his face. Plaintiff is proceeding on an Eighth Amendment claim for the use of excessive force against John Does 6, 8, and 9 and Sergeant Story.

On July 5, 2023, the Court entered a scheduling order for the purpose of allowing the parties to engage in limited discovery aimed at identifying the John Doe Defendants. (Doc. 19). Warden Anthony Wills has remained a defendant in this case in order to respond to the John Doe related discovery. On August 21, 2023, Plaintiff filed a motion to substitute Sergeant Story for John Doe 7. (Doc. 24, 25). Plaintiff was given until October 4, 2023, to file a motion to substitute for the remaining unidentified defendants. The parties were directed to file notices with the court regarding the discovery they exchanged. (*See* Doc. 19, 27, 34).

---

[1] Correctional Officer Osborn is not a party to this case.
[2] Previously John Doe #7. (*See* Doc. 1, 25).

In his notice, Plaintiff describes John Doe 6 as a "short white male, approximately 5'7" to 5'10" feet all." (Doc. 27). He states that he does not remember seeing a sergeant or lieutenant badge on John Doe 6 and believes he was a correctional officer at the time. John Doe 6 was wearing tactical gear during their interactions. Plaintiff states that the events involving John Doe 6 occurred between 3 and 4 a.m. so he would have been working "3rd shift." Plaintiff also states that his removal from his cell by John Doe 6 and another correctional officer was recorded on a handheld camera and the footage from the handheld camera and gallery cameras will help identify John Doe 6.

Plaintiff describes John Does 8 and 9 as tall white males who were correctional officers and not sergeants or lieutenants. They came to take him to a new cell between 2:30 p.m. and 3:00 p.m. Plaintiff states that Sergeant Story can identify these two individuals and camera footage from N-2 cellhouse will aid in their identification.

Defendant Wills stated in his notice that he was unable to identify John Does 6, 8, and 9 based on the information provided by Plaintiff. Wills produced to Plaintiff a redacted copy of the staff rosters for February 16 and 17, 2021. (Doc. 34). On October 4, 2023, Plaintiff filed his motion to compel. (Doc. 37).

### MOTION TO COMPEL DISCOVERY

In the motion to compel, Plaintiff asks the Court to compel Warden Wills to provide him with the identifies of the John Does. He states that the staff rosters he received are not accurate, as they are dated as printed on February 2, 2021, and February 9, 2021. (Doc. 37). The rosters also do not provide the names of the tactical team members. He argues that he cannot further describe the John Does because they are tactical team members and were wearing tactical gear with helmets and no name tags or badge numbers at the time of the alleged events. He asks that Warden Wills take the following additional steps in assisting in identification: (1) ask Sergeant

Story for the identities of John Does 8 and 9; (2) produce the roster sheet of the tactical team members who were assigned to escort inmates back to new cells; and (3) produce the video footage from the handheld camera used during cell extraction and gallery cameras.

Warden Wills opposes the motion. (Doc. 40). He states that Sergeant Story was unable to identify who he worked with him on February 16 or 17, 2021, and "no video of Plaintiff was located by Menard Correctional Center." Wills also argues that there is no documentation that Plaintiff moved cells. Wills, however, incorrectly references the dates of October 7, 2021, to November 22, 2021. The Living Unit History submitted by Wills does in fact demonstrate the Plaintiff was transferred to a different cell on February 17, 2021, as alleged. (*See* Doc. 40-1).

At the hearing, Defendant Wills called Major Roland as a witness. Roland testified that in the early morning of February 17, 2021, inmates in North 2 restrictive housing unit at Menard were setting fires and committing staff assaults. He stated that while waiting on the regional tactical team to arrive, a team of six staff members from Menard, wearing oxygens masks and packs, removed individuals from their cells. Roland stated handheld cameras were not used when removing the inmates from cells on February 17 and that the smoke obstructed the video footage from the gallery cameras.

Warden Wills testified that if an inmate is extracted from his cell and pepper spray is used, then an incident report would have been prepared documenting the use of nonlethal force and the officers involved. The incident report, once completed, is forwarded to Warden Wills. However, if an officer is escorting an inmate as a part of his or her normal duties and no force outside of handcuffing the inmate is used or no abnormal incident occurs, then an incident report is not prepared. No incident reports involving Plaintiff have been located for February 17. Warden Wills testified that there are no additional documents or evidence that can be given to Plaintiff to assist him in identifying John Does 8 and 9.

Plaintiff testified that John Doe 6 would be one of the six offers who cleared North 2 around 3 a.m. on February 17. He also clarified that John Does 8 and 9 worked with the Menard tactical team and were not from another facility.

### DISCUSSION

As courts in this district haves stated, "[c]orrectional officers may not benefit from a plaintiff's inability to identify particular officers who were involved in an alleged violation of inmate rights." *Ross v. Gossett,* No. 15-cv-309-SMY-PMF, 2016 WL 335991 at *3 (S.D. Ill. Jan 28, 2016) (citing *Fillmore v. Page,* 358 F. 3d 496, 507 (7th Cir. 2004)). The Seventh Circuit has instructed courts to be vigilant "to ensure the proper information sees the light of day," and to not "reward reliance on the legendary code of silence among law enforcement officers." *Filmore,* 358 F. 3d at 507. To that end, the Court finds that additional discovery is needed. It appears that Plaintiff has made a good faith effort to identify the John Doe Defendants, but he has been thwarted by the lack of proper record keeping on the part of the Illinois Department of Corrections.[3] To aide Plaintiff in this process, Defendant Wills is directed to provide affidavits from the following individuals:

- The six officers who participated in escorting inmates from their cells in North 2 attesting to their activities and movements on the morning of February 17, 2021, and whether they interacted with and/or escorted Plaintiff from his cell.

- Sergeant Story attesting to his activities and movements on February 17, 2021, and whether he recalls the names of other officers who were escorting inmates to and from cells in response to the fires and assaults.

- Correctional Officer Osborn attesting to his activities and movements on February 17, 2021, and whether he recalls the names of other officers who were escorting inmates to

---

[3] For example, based on Warden Wills' testimony, if officer misconduct is alleged by an inmate, an officer has not filed out an incident report, and the officers involved cannot be physically described due to wearing masks and helmets, then the only way to determine who could have been involved, witnessed the incident, or refute the allegation is by interviewing every staff member who was working that day. If a regional tactical team was present at the correctional facility, as it was in this case, then this would require an investigator to interview over 150 people. There is not a more efficient way to narrow down this large pool of people.

and from cells in response to the fires and assaults.[4]

Defendant Wills is to further brief the Court on why camera footage is not available that would have recorded Plaintiff being escorted from the room he was held in for several hours to his new cell on February 17, 2021, by Sergeant Story and John Does 8 and 9.[5] Defendant Wills shall have four weeks to provide the affidavits to Plaintiff and file them with the Court and to brief the Court with further information on the video footage.

At the hearing, Plaintiff testified that he believed John Does 8 and 9 were members of the Menard tactical team and not a member of the regional team. If there is a tactical team composed of only Menard staff members, Defendant Wills is directed to provide Plaintiff with a list of individuals who are members of the team and who were present at the facility on February 17, 2021. Wills shall have four weeks to provide the list to Plaintiff and file the list with the Court.

The Court further notes that in his motion requesting to substitute Sergeant Story for John Doe 7, Plaintiff states that he "recognized him as the staff member who assaulted him and asked him his name." (Doc. 23, 1). Plaintiff is to file a brief with the Court further explaining how he was able to recognize Sergeant Story if Story was wearing tactical gear during their interaction and why Plaintiff is unable to provide a physical description for John Does 8 and 9. Plaintiff shall have until **February 6, 2024,** to identify the John Doe Defendants and file a motion to substitute.

### DISPOSITION

For the reasons stated above, the motion to compel discovery (Doc. 37) is **GRANTED in part and DENIED in part.**

Defendant Wills has until **January 9, 2024,** to provide Plaintiff and the Court with the

---

[4] In the First Amended Complaint, Plaintiff alleges that Correctional Officer Osborn spoke with his escorting officers, including Sergeant Story. (Doc. 36, p. 12-13).
[5] At the hearing, Major Rowland explained why video footage was not available in the early morning of February 17, 2021, but it is unclear why video footage is unavailable for later in the day.

following (as specified in further detail above):

- Affidavits from the six officers who participated in escorting inmates from their cells in North 2 on February 17, 2021, Segreant Story, and Correctional Officer Osborn.

- A supplemental brief on the availability of video camera footage of Plaintiff being escorted from the room he was held in for several hours to his new cell.

- A list of individuals who are members of the Menard tactical team and were present at the facility on February 17, 2021.

On or before **January 9, 2024,** Plaintiff shall provide the Court with a supplemental brief explaining how he was able to recognize Sergeant Story but is unable to provide a physical description for John Does 8 and 9. **Plaintiff shall have until February 6, 2024, to identify the John Doe Defendants and file a motion to substitute.**

**IT IS SO ORDERED.**

DATED:  December 12, 2023

                                        *s/Stephen P. McGlynn*
                                        **STEPHEN P. MCGLYNN**
                                        **United States District Judge**