IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER CROOM,** **#R23966,** | |
| Plaintiff, | Case No. 22-cv-01244-SPM |
| v. | |
| **John Doe #5,** *et al.*, | |
| Defendants. | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

In this Section 1983 civil rights action, pro se Plaintiff Christopher Croom is proceeding on Eighth Amendment claims against John Does 6, 8, and 9 and Sergeant Story for the use of excessive force against Plaintiff on February 17, 2021. (Doc. 35). This matter is now before the Court for case management purposes, as three John Doe Defendants remain unidentified.

I.   Show Cause Order (Doc. 61)

Following a hearing on Plaintiff's motion to compel discovery that could assist in identifying the John Doe Defendants, the Court granted the motion in part. (Doc. 48, 49). Defendant Warden Wills was directed to produce to Plaintiff and file with the Court affidavits from six correctional officers who participated in escorting inmates from their cells in North 2 during the alleged events on February 17, 2021, an affidavit from Defendant Sergeant Story, and an affidavit from Correctional Officer Osborn. (Doc. 49). Defendant Wills was also ordered to brief the Court on why camera footage is not available that would have recorded Plaintiff being escorted from the room he was held in for several hours to his new cell on February 17. (*Id.*).

After giving Defendants Wills four months to gather the required information, Wills failed

to comply with the Court's Order. (*See* Doc. 60). Wills did not file all the discovery with the Court as directed and failed to produce the affidavits of two correctional officers, Jason Morris and Ryan Ashton. The Court ordered Wills to show cause as to why he should not be sanctioned or otherwise held in contempt for non-compliance with an order of the court. (Doc. 61).

In response to the Show Cause Order, Defense Counsel for Defendant Wills states that failure to file the discovery with the Court was an oversight on her part and no fault of the defendant.[1] (Doc. 68). She has now filed all affidavits with the Court. Defense Counsel further states that the affidavit of Jason Morris was signed on April 11, 2024, and mailed to Plaintiff the following day. There was a delay in obtaining Morris' signature on the affidavit because Defense Counsel had lost contact with him while he was away from work. Defendant Counsel was not able to have the affidavit signed until his return. As to the affidavit of Ryan Ashton, Defense Counsel states that Ashton cooperated in preparation of the declaration, but since that time, Defense Counsel has lost contact with him. He has not returned any messages, and the draft affidavit that was sent to Ashton for his signature via certified mail was returned unclaimed.

The Court **DEEMS** the Show Cause Order satisfied, and the Court will not assess sanctions at this point. Defendant Wills has now complied with the Court's Order at Doc. 49, to the fullest extent possible, and demonstrated that he was not acting in willfulness, bad faith, or fault. *See* FED. R. CIV. P. 37(b); *In re Golant,* 239 F. 3d 931, 936 (7th Cir. 2001). Defendant Wills was unable to timely obtain the affidavits of Morris and Ashton due to events outside of his control, both individuals were unreachable, and he failed to file the discovery as directed with Court due to inadvertence. *See Ramirez v. T&H Lemont, Incorporated,* 845 F. 3d 772, 776 (7th Cir. 2016) ("fault" requires extraordinarily poor judgment or gross negligence rather than mere mistake or

---

[1] Although the Court will not issue sanctions at this time, the Court finds this argument not well taken, as "a litigant is bound by his lawyer's acts." *Tolliver v. Northrop Corp.,* 786 F. 2d 316, 319 (1986).

carelessness). Accordingly, the Show Cause Order is discharged. The hearing set for June 3, 2024, is **CANCELED**.

    II.       **Additional Steps to Identify the John Doe Defendants**

As for the briefing concerning the video footage, Defendant Wills provides a declaration from Lieutenant Mark Hanks. (Doc. 60-1). Hanks states that Internal Affairs reviewed numerous hours of camera footage associated with the alleged events of February 17, 202, and Internal Affairs did not identify footage that showed Plaintiff or verbalized that the individual being recorded was Plaintiff. He further attests that most of the footage showed individuals from the waist down without facial recognition. Hanks asserts that the video footage did not show anyone being struck by officers or any excessive use of force. (*Id.*).

In response, Plaintiff states that he never claimed to have been assaulted by Sergeant Story, John Doe 8, and John Doe 9 on camera. (Doc. 65). He asserts that when Defendants came to retrieve him from the video conferencing room and take him to a new cell, they took him down a hallway that does not have cameras. Plaintiff states he was assaulted in an area with no cameras. Plaintiff believes, however, that there is camera footage from the hall and the gallery that will show John Doe 8 and John Doe 9. He asks for the Court to compel Defendants to allow him to review the camera footage in order to identify these individuals.

After reviewing the affidavits produced by correctional officers involved in the extractions on the morning of February 17, 2021, Plaintiff points out the inconsistencies in Major Rowland's testimony from the hearing and the declaration of Robert Furman. (Doc. 68-1, p. 11). At the hearing, Major Rowland testified that handheld cameras were not used when extracting inmates from their cells, but Robert Furman attests that he had a handheld recorder to videotape extractions on February 17, 2021.

Additionally, Plaintiff requests to review the gallery footage from the hours between 2:00

a.m. and 7:00 a.m. on February 17, 2021. He states that he disagrees with Major Rowland's testimony that there was so much smoke in the cellhouse the morning of February 17, 2021, that the images on the video footage was not visible. (Doc. 65). Plaintiff states that while there may have been a lot of smoke the first time he was sprayed by John Doe 6, John Doe 6 returned an hour later to spray him again and at this the smoke had dissipated.

Given the discrepancies between testimony at the hearing and the recently submitted declarations, the existence of handheld video footage and other gallery video footage that has yet to be reviewed, and additional information that could be requested to assist in the identification of the John Doe Defendants, the Court finds that counsel is warranted to assist Plaintiff. The case now is at the point where the difficulty of the case exceeds Plaintiff's ability to "coherently present it to the judge or jury himself." *Pruitt v. Mote,* 503 F. 3d 647, 655 (7th Cir. 2007). Accordingly, the Court will sua sponte recruit counsel to represent Plaintiff in this matter.[2] Counsel will be recruited in a separate order.

In light of the recruitment of counsel to help Plaintiff conduct discovery and identify the unknown defendants in this case, the deadline to identify the John Doe Defendants is stayed and will be reset once recruited counsel has entered his or her appearance. The Motion for Status filed by Plaintiff is **DENIED** as moot in light of this Order. (Doc. 62).

**IT IS SO ORDERED.**

**DATED:   May 20, 2024**

                                                            *s/Stephen P. McGlynn*
                                                            **STEPHEN P. MCGLYNN**
                                                            **United States District Judge**

---

[2] Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." Although Plaintiff is not proceeding *in forma pauperis* and has paid the full filing fee, the Court still finds him indigent and unable to afford counsel for the purposes of Section 1915(e)(1). His prison financial statements indicate that at the time of filing Plaintiff had $501.88 in his trust fund account. This amount is simply not sufficient to pay an attorney's hourly rate to litigate a case from start to finish.